UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>                Plaintiff,<br><br>                v.<br><br>GREGORY STRAND, et al.,<br><br>                Defendants. | CASE NO. C11-1334JLR<br><br>ORDER DENYING SUMMARY JUDGMENT |

## I. INTRODUCTION

Plaintiff Allstate Property and Casualty Insurance Company ("Allstate") seeks a declaratory judgment that it is not obligated to cover the estate of Defendants Michael Hathaway and Teresa Hathaway (collectively, "the Hathaways") for the claims made against them by Defendants Gregory Strand and Katherine Strand (collectively, "the Strands"). Before the court at this time is Allstate's motion for summary judgment (Dkt. # 21), arguing that Michael Hathaway's conduct is not a covered "occurrence" under the

ORDER- 1

Hathaways' insurance policy and is excluded from coverage as an intentional act. Having reviewed the submissions of the parties, the record, and the relevant law, the court DENIES Allstate's motion for summary judgment (SJ Mot. (Dkt. # 21)).

## II. BACKGROUND AND PROCEDURAL HISTORY

### A. Tree dispute

Under a view restriction easement that governs the height of trees and other vegetation, adjacent lot owners had a right of entry to the parcel owned by the Strands "for the purpose[s] of trimming, topping, or pruning trees or vegetation." (Amended Compl. (Dkt. # 9) ¶ 10.) The Hathaways owned one of the lots neighboring the Strands' lot. (SJ Mot. (Dkt. # 21) at 3.) In relation to issues with the Hathaways under the easement, the Strands sought a conditional use permit for tree trimming, with an option for removal if certain conditions were met. (Amended Compl. ¶ 11; *see* Strand Ans. ¶ 11.) With respect to the request for removal of trees, the City of Edmonds Development Services Department "issued 'a permit conditions not satisfied' letter . . . as the trees were located within a geologically hazardous area [and] an environmentally critical area." (*Id.* ¶ 12; *see* Strand Ans. ¶ 12.)

On January 24, 2010, Michael Hathaway or his agents entered on the Strand property without the Strands' approval and removed three Douglas fir trees and one Western Red Cedar tree.[1] (*Id.* ¶ 13; *see* Strand Ans. ¶ 13.) During the removal, "at least

---

[1] He may also have removed Black Cottonwood and Red Alder trees. (Amended Compl. ¶ 13.)

one tree struck [the Strand] home causing significant damage." (*Id*. ¶ 14; *see* Strand Ans. ¶ 14.) The removal of the trees also "resulted in soil exposure increases, increased erosion, and other disruptive and/or de-stabilizing activities," with no remedial measures on the Hathaways' part. (*Id*. ¶ 15; *see* Strand Ans. ¶ 15.)

**B.     Insurance Contract**

Prior to the tree cutting, Allstate "issued Hathaway a homeowner's insurance contract, and a personal umbrella insurance contract." (*Id*. ¶ 5.) Under the homeowner's policy ("Homeowner's Policy"), Allstate would "pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy." (Foley Dec., Ex. B (Dkt. # 23-2) at 22.) The Homeowner's Policy defines "occurrence" as

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.

(*Id*. at 3.) Under the personal umbrella policy ("PUP"), "occurrence"

> means an accident or a continuous exposure to conditions. An occurrence includes personal injury and property damage caused by an insured while trying to protect persons or property from injury or damage.

(Foley Dec., Ex. C (Dkt. # 23-3) at 1-2.)

The exclusions section of the Homeowner's Policy states,

> We do not cover any . . . property damage intended by, or which may reasonably be expected to result from the intentional . . . acts or omissions of, any insured person. This exclusion applies even if . . . (b) such . . . property damage is of a different kind or degree than intended or

> reasonably expected; or (c) such . . . property damage is sustained by a different person than intended or reasonably expected.

(Foley Dec., Ex. B at 22.) The general exclusions section of the PUP states,

> This policy will not apply . . . to any intentionally harmful act or omission of an insured, even if . . . the personal injury or property damage resulting from the act or omission occurs to a person or property other than the person or property to whom the act or omission was intended or is of a different nature or magnitude than was intended.

(Foley Dec., Ex. C at 5-6.) Through an endorsement, this exclusion was modified as follows:

> This policy will not apply . . . to any intentionally harmful act or omission of an insured, even if . . . the personal injury, property damage or bodily injury resulting from the act or omission occurs to a person or property other than the person or property to whom the act or omission was intended or is of a different nature or magnitude than was intended.

(Amended Compl. ¶ 18.)

**C.  Procedural History**

On April 7, 2010, the Strands filed an amended complaint against the Hathaways in the Superior Court of the State of Washington for Snohomish County. (*Id*. ¶ 6; *see* Strand Ans. ¶ 6.) On December 2, 2011, Allstate filed an amended complaint for declaratory judgment in the United States District Court for the Western District of Washington, seeking a judgment that Allstate is not obligated to provide coverage to the Hathaways in the Strand lawsuit. (Amended Compl. at 8-9.) Allstate asserts that it is not obligated because the incidents at issue do not qualify as occurrences under the terms of its contracts with the Hathaways and because the incident falls under the exclusions for intentional conduct. (*Id*.)

On February 23, 2012, Allstate filed a motion for summary judgment, requesting that the court declare that it is not obligated to provide coverage for the Hathaways. (SJ Mot. at 1.)

## III. ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (citations and quotations omitted).

The moving party has the initial burden of producing evidence or showing the absence of evidence and the burden of persuasion on the motion. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party may meet its burden of production by producing "evidence negating an essential element of the nonmoving party's claim" or by showing "that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Id.* at 1106. The moving party must first have "made reasonable efforts . . . to discover whether the nonmoving party has enough evidence to carry its burden of persuasion at trial." *Id.* at 1105. Then, the moving party "need only point out that there is an absence of evidence to support the nonmoving party's case." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citations and quotations omitted).

If the moving party carries its initial burden of production, the nonmoving party "must produce evidence to support its claim or defense." *Nissan*, 210 F.3d at 1103. The nonmoving party "must provide . . . evidence that set[s] forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (internal quotations and citations omitted). If the nonmoving party does not "produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan*, 210 F.3d at 1103.

**B.     Rules of Insurance Policy Interpretation**

Under Washington State law, "the interpretation of language in an insurance policy is a matter of law." *Moeller v. Farmers Ins. Co. of Wash.*, 267 P.3d 998, 1001 (Wash. 2011). "If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists." *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 760 P.2d 337, 340 (Wash. 1988). Nevertheless, "the contract as whole must be read as the average person would read it; it should be given a practical and reasonable rather than a literal interpretation, and not a strained or forced construction leading to absurd results." *Moeller*, 267 P.3d at 1002 (citations and quotations omitted).

A policy is ambiguous, however, "if the *language on its face* is fairly susceptible to two different but reasonable interpretations." *Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 312 (Wash. 1994) (citations and quotations omitted). In that case, "the court must apply a construction that is most favorable to the insured, even though the insurer may have intended another meaning." *Vadheim v. Cont'l Ins. Co.*, 734 P.2d 17, 20 (Wash. 1987).

Any undefined terms should be "given their ordinary and common meaning, not their legal, technical meaning." *Moeller*, 267 P.3d at 1002. "Exclusionary clauses are to be most strictly construed against the insurer." *Vadheim*, 734 P.2d at 20.

Analysis of a contract is a two step process. The court first examines the policy provisions to determine if "the loss falls within the scope of the policy's covered losses." *Nw. Bedding Co. v. Nat'l Fire Ins. Co. of Hartford*, 225 P.3d 484, 487 (Wash. Ct. App. 2010). If the party contesting the denial of coverage shows that the loss is within the scope of covered losses, "[t]he insurer then must show that the claim of loss is excluded." *Id.*; *see also Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1172 (Wash. 2000).

Here, the court will first examine whether the incidents at issue constitute an occurrence under the policy. The court will then examine whether Allstate is relieved of its duty to indemnify because Michael Hathaway's actions fall under the exclusion for intentional acts.

**C.    Occurrence**

Allstate contends that the losses at issue do not fall under "the scope of the policy's covered losses," *Nw. Bedding Co*, 225 P.3d at 487, because Hathaway's actions were intentional and therefore cannot be considered an accident and thus an occurrence. (SJ Mot. (Dkt. # 21) at 12.) The Strands argue that the damages occasioned by Hathaway's conduct constitute an occurrence because his conduct resulted in unintended losses and consequences that are included within the meaning of "accident" under Washington law. (Resp. to SJ Mot. (Dkt. # 25) at 13.)

The Homeowner's Policy covers "property damage arising from an occurrence to which [the] policy applies." (Foley Dec., Ex. B at 22.) An occurrence is defined in the Homeowner's Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id*. at 3.) Under the PUP, an occurrence is defined as "an accident or a continuous exposure to conditions," including "personal injury and property damage caused by an insured while trying to protect persons or property from injury or damage." (Foley Dec., Ex. C at 1-2.) The term "accident" is not defined in the policy.

"Where . . . the word "accident" is not . . . defined in a policy, [Washington State courts] look to . . . common law for definition." *Detweiler v. J.C. Penney Cas. Ins. Co.*, 751 P.2d 282, 284 (Wash. 1988). "[A]n accident is never present when a deliberate act is performed." *Id*. (quoting *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81*, 579 P.2d 1015 (Wash. Ct. App. 1978)). Even a deliberate act may be an accident, however, if "some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death." *Detweiler*, 751 P.2d at 284. In that case, though, both the means and the result "must be unforeseen, involuntary, unexpected and unusual." *Id*.

Moreover, in *Queen City Farms, Inc. v. Central National Insurance of Omaha*, the Washington Supreme Court clarified the standard as applied to the negligent conduct that is sometimes part of the damages resulting from intentional conduct. *See Allstate Ins. Co. v. Jackson*, 2010 WL 1849076 at *3. It wrote, "[A]n objective standard is inconsistent with insurance coverage for damage resulting from ordinary negligence."

ORDER- 8

*Queen City Farms*, 882 P.2d at 713.[2]  Similarly, in *Overton v. Consolidated Insurance Co.*, the court focused on another part of the standard insurance policy language defining "occurrence"—on whether damage was expected or intended rather than on the meaning of the term "accident"—and concluded that whether an event was expected and thus not an occurrence depends on "the subjective state of mind of the insured with respect to the property damage."[3]  38 P.3d 322, 325 (Wash. 2002).

The Washington Court of Appeals has applied this principle even more broadly. In *Nationwide Mutual Insurance Co. v. Hayles, Inc.*, it specified that, to be deliberate and thus not an accident, an intentional act must be "done with awareness of the implications or consequences of the act."  150 P.3d 589, 593 (Wash. Ct. App. 2007).  On the other hand, "[i]ntentional, wrongful acts will not qualify as accidents or 'occurrences' if the results could have been expected from the acts."  *Id*. (internal citation omitted). Similarly, although in dicta, the court in *Cle Elum Bowl, Inc. v. North Pacific Insurance Co., Inc.* required a subjective test in deciding whether there was an occurrence under a

---

[2] The Washington Supreme Court also distinguished between the standard for determining the meaning of the word "accident" in the definition for "occurrence" and the standard for determining "expectation of the damages" in the definition of "occurrence."  882 P.2d 703, 714 (Wash. 1994).  It concluded that its former holdings on whether an objective standard applies to whether there was an accident "does not control the question whether the expectation of injury or damage is to be decided under an objective or subjective standard."  *Id*. It then concluded "that a subjective standard applies" to the question whether "that injury or damage resulting from acts of negligence, even though precipitated by an intentional act, would be covered under the occurrence clause."  *Id*.

[3] The policy in *Overton* defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  38 P.3d at 325.

policy with language identical to that here. 981 P.2d 872, 876 (1999). From the common law requirement that an event be unexpected to be an accident, the *Cle Elum Bowl* court concluded that "[w]hether or not an insured 'expected' a particular event is a subjective test, requiring evidence of the insured's state of mind." *Id*. Based on the Washington Supreme Court's decision in *Queen City Farms*, the court in *Cle Elum Bowl* concluded that the trial court had erred in deciding that the damage was not unexpected and therefore not an occurrence. The court ultimately upheld the trial court's decision, however, because the damage "was clearly excluded by the policy." *Id.*; *see also Indem. Ins. Co. of N. Am. v. City of Tacoma*, 158 Wash. App. 1022 (Wash. Ct. App. 2010) (unpublished decision), as corrected on denial of reconsideration (Feb. 10, 2011), *review denied*, 257 P.3d 662 (Wash. 2011) ("In determining whether damage 'unexpectedly and unintentionally results[, ]' a subjective standard is applied based upon the state-of-mind of the insured.").

Furthermore, "the word 'accident' is but part of the definition of the broader term 'occurrence.'" *Yakima Cement Products Co. v. Great Am. Ins. Co.*, 608 P.2d 254, 257 (Wash. 1980). Beginning in 1966, standard insurance policy language was revised with the "purpose of . . . broaden[ing] coverage." *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 827 P.2d 1024, 1039 (Wash. Ct. App. 1992), *aff'd and remanded*, 882 P.2d 703 (Wash. 1994) (citation and quotations omitted). The word "occurrence" replaced the word "accident" in standard insurance policy language, and an "occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the

standpoint of the insured." *Id*. "The newer definition of occurrence and accident eliminates the need for an exact finding of the cause of damages so long as they are neither expected or intended from the standpoint of the insured."[4] *Id*.

Accordingly, the words "occurrence" and "accident" "are not synonymous." *Id*. "[A]ccident means something that must have come about or happened in a certain way, while occurrence means something that happened or came about in any way." *Yakima*, 608 P.2d at 257 (quoting *Aerial Agr. Serv. Inc. v. Till*, 207 F. Supp. 50, 57-58 (N.D. Miss. 1962). Thus, "from the usual and ordinary meaning of the words used[,] the word 'occurrence' extends to events included within the term 'accident' and also to such conditions, not caused by accident, which may produce an injury not purposely or deliberately." *Id*. (quoting *Aerial*, 207 F. Supp. at 57-58). Thus, "[t]he term 'occurrence' has a meaning broader than 'accident' and may apply to a mishap which is negligent. However, it must nevertheless result in unintended consequences" for there to be an "occurrence" and thus coverage under the Homeowner's Policy. *Palouse Seed Co.*, 697 P.2d at 595.

---

[4] *See also City of Medina v. Transamerica Ins. Co.*, 680 P.2d 69, 71 (Wash. Ct. App. 1984), *abrogated on other grounds by Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 882 P.2d 703 (Wash. 1994) (An occurrence is "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured"); *Palouse Seed Co. v. Aetna Ins. Co.*, 697 P.2d 593, 594 (Wash. Ct. App. 1985), *abrogated by Queen City Farms*, 882 P.2d 703 ("'Occurrence' is defined by the policy as 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.'").

ORDER- 11

Here, and in accord with the foregoing, the language in the Homeowner's Policy and the PUP indicates that the word "occurrence" encompasses a broader range of events than the word "accident." The Homeowner's Policy states that an occurrence encompasses not just "an accident," but also "continuous or repeated exposure to . . . harmful conditions."[5] (Foley Dec., Ex. B at 3.) The PUP's broader language necessarily includes some intentional action when it states that an occurrence includes "property damage caused by an insured while *trying* to protect persons or property from injury or damage." (Foley Dec., Ex. C. at 1-2 (emphasis added).)

In sum, the language in the contracts at issue indicates that "occurrence" has a broader meaning than "accident." The standard language from which the contracts' language was borrowed was introduced to broaden the meaning of "occurrence"—and the conduct that would be covered under a policy—beyond that of "accident." *Queen City Farms*, 827 P.2d at 1039. Moreover, the "practical and reasonable . . . interpretation" of the term "occurrence," *Moeller*, 267 P.3d at 1002, is that given by the court in *Yakima*, "something that happened or came about in any way." *Yakima*, 708 P.2d at 257 (citation and quotations omitted). Accidents, events, and conditions

---

[5] To the extent that the language in the Homeowner's Policy differs from the standard insurance policy language, it would only make it easier for an event to be qualified as an occurrence. The standard language states that an "occurrence" is "an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Queen City Farms*, 827 P.2d at 1039. The language in the Homeowner's Policy, however, eliminates the requirement that the damage be "neither expected nor intended from the standpoint of the insured." (Foley Dec., Ex. B at 3.) This would only broaden the meaning of occurrence, not even requiring that the event be unexpected.

ORDER- 12

constitute an "occurrence" so long as the resulting injury or damage is "neither expected nor intended from the standpoint of the insured." *Queen City Farms*, 827 P.2d at 1039. Allstate has only addressed the issue of whether Hathaway's conduct met the definition of an accident; it has not submitted sufficient evidence to demonstrate that there is no genuine issue as to the conduct under the "broader term 'occurrence.'" *Yakima*, 608 P.2d at 257.

Nevertheless, even if the court were to restrict the meaning of "occurrence" to that of an "accident," Allstate would not be entitled to summary judgment as a matter of law under either the subjective or objective standards controlling the analysis of whether conduct constitutes an "accident." For Michael Hathaway's actions to be intentional and thus not an accident under the subjective standard, they must have been "deliberate, meaning done with awareness of the implications or consequences of the act." *Hayles*, 150 P.3d at 593. (Wash. Ct. App. 2007). His actions "will not qualify as accidents or 'occurrences' if the results could have been expected from the acts." *Id*. (internal citation omitted). The Strands conceded that Hathaway entered the property and caused the trees to be cut down, (Strand Ans. ¶ 13.) which were intentional acts. As this court concluded in *Jackson*, however, under Washington State law "it is clear that the term 'accident' encompasses some intentional acts that result in unintended losses or consequences." 2010 WL 1849076 at *4.

Here, there is insufficient evidence in the record to demonstrate that Michael Hathaway was "aware[] of the implications or consequences of" his actions, or that all the damages from the tree cutting "could have been expected from [his] acts." *Hayles*,

150 P.3d at 593.  Allstate relies on the Hathaways' answer to the Strands' complaint in Snohomish County Superior Court to argue that there is no dispute as to material facts. (Reply to SJ Mot. (Dkt. # 27) at 5.)  Allstate argues that the admissions demonstrate that Michael Hathaway removed some trees, that he was a participant in the permit process with the City of Edmonds, that he was aware that the permit to remove trees had been denied in a "permit conditions not satisfied" letter, and that the trees were in an environmentally sensitive area.  (*Id.*)  Looking at their answer in the Snohomish County action, the Hathaways admit the terms of the letter from the City of Edmonds (but deny any allegations inconsistent with the terms of that letter), that "Michael Hathaway caused individuals to enter [the Strands'] property who removed certain trees," that he had been advised he could not remove the trees without a permit, and that the trees were in an area designated in the City code "under certain descriptions."  (Vasquez Decl., Ex. 1 (Dkt. #26-1) at 2.)  Whether the admissions in the answer demonstrate the conclusions asserted by Allstate is a question of fact that must be resolved by a jury.  Moreover, these facts do not demonstrate that there is no question of fact whether Hathaway could have expected that damage would result to the Strand home or to the hillside.  Viewing the evidence in the light most favorable to the non-moving party, Allstate has not demonstrated that there is no genuine dispute of material fact whether the damage to the Strand home or to the hillside "could have been expected from [Michael Hathaway's] acts."  *Hayles*, 150 P.3d at 593.

      Even under the objective standard, Allstate would not be entitled to summary judgment.  Under that standard, even a deliberate act may be an accident if "some

additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death." *Detweiler*, 751 P.2d at 284. In *Jackson*, where Jackson intentionally engaged in a gun trade that led to another's death, the court concluded that the use of the gun was an "additional unexpected, independent and unforeseen happening." 2010 WL 1849076 at *4. Even in *Detweiler*, where the court stated that it was "arguable that claimant's injuries were a natural consequence of his actions" when he intentionally fired his gun at a moving vehicle and was struck by the resulting shrapnel, the court concluded that it would be improper to grant summary judgment because "reasonable minds could disagree as to whether under the circumstances what happened was an additional, unexpected, independent and unforeseen happening." 751 P.2d at 286-87 (internal citations and quotations omitted). Similarly, in *State Farm Fire and Casualty Co. v. Ham and Rye, LLC*, the court stated that a jury had to decide whether damage to a building was so reasonably foreseeable that it was not an occurrence when a fire later spread from newspapers the insured had lit, and unknowingly failed to put out, on the sidewalk by the building. 174 P.3d 1175, 1181 (Wash. Ct. App. 2007).

      Allstate relies on the evidence discussed above in arguing that the damage to the Strand home and the hillside "was not unforeseen or unexpected." (Reply to SJ Mot. at 5). As discussed above, whether the admissions in the Hathaways' answer to the Strands' lawsuit demonstrate the conclusions asserted by Allstate is a question of fact to be resolved by a jury. Moreover, those facts do not demonstrate that there is no question of fact whether the damage to the Strand home or to the hillside would be unforeseen or

unexpected under the objective standard. Viewing the evidence in the light most favorable to the nonmoving party, Allstate has not demonstrated that there is no genuine issue of material fact as to whether the damage to the Strand home and to the hillside was not "unforeseen, involuntary, unexpected and unusual." *Id*. Allstate is not entitled to summary judgment as a matter of law that the losses were not covered by the policy because they were not an occurrence.

**D.     Exclusion**

"The insurer . . . must show that the claim of loss is excluded." *Nw. Bedding Co.*, 225 P.3d at 487. Allstate here argues that the losses are not covered because they fall under the policies' exclusions for intentional activity. (SJ Mot. at 18.) The Strands argue that if there is an occurrence, then the exclusion for intentional activity does not apply. (Response to SJ Mot. at 14.)

The Washington Supreme Court has held that "exclusions from coverage of insurance are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning." *Stuart v. Am. States Ins. Co.*, 953 P.2d 462, 464 (Wash. 1998). It has also concluded that "[e]xclusions should . . . be strictly construed against the insurer." *Id*.

The Homeowner's Policy excludes coverage for "property damage intended by, or which may be reasonably be expected to result from the intentional . . . acts or omissions of, any insured person." (Foley Dec., Ex. B at 22.) Similarly, the PUP states that the "policy will not apply to any intentionally harmful act . . . of an insured." (Foley Dec., Ex. C at 5-6.)

The Washington Supreme Court has concluded that a subjective standard applies to "expectation of harm" and "expectation of damages." *Queen City Farms*, 882 P.2d at 714. The Washington Court of Appeals explained that the word "expected," in this context, "carries the connotation of a high degree of certainty or probability." *Queen City Farms*, 827 P.2d at 1036 (internal citations and quotations omitted).

In arguing that coverage is denied by the Homeowner's Policy's exclusion for intentional action, Allstate relies on the admission that Hathaway cut down the trees. (Reply to SJ Mot. at 10-11.) As Allstate argues, the record establishes that Michael Hathaway acted intentionally in cutting down the trees. (Amended Compl. ¶ 13; Strand Ans. ¶ 13). Nevertheless, the Homeowner's Policy's exclusion for intentional action nonetheless covers intentional action under certain circumstances. To show that coverage is excluded, Allstate must demonstrate that the damage could not "reasonably be expected to result from the [insured's] intentional . . . acts." As discussed above, the evidence relied upon by Allstate does not demonstrate that there is no question of fact whether the damage to the Strand home or to the hillside could have been foreseen or expected. Viewing the evidence in the light most favorable to the nonmoving party, Allstate has not demonstrated that Hathaway expected, with "a high degree of certainty or probability," *Queen City Farms*, 827 P.2d at 1036, that the trees would damage the Strand home or that cutting the trees would result in damage to the hillside.

Similarly, viewing the evidence in the light most favorable to the nonmoving party, Allstate has not demonstrated that Michael Hathaway's actions are excluded under the PUP, which does not cover damage for an "intentionally harmful act." While

Hathaway intentionally cut down the trees, the record does not demonstrate that he intended to harm the home or the hillside. Allstate has failed to demonstrate that there is no genuine dispute as to any material fact and that it is therefore entitled to summary judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, the court DENIES Allstate's motion for summary judgment (Dkt. # 21).

Dated this 4th day of June, 2012.

*[signature]*

The Honorable James L. Robart
U.S. District Court Judge